UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL FARBUSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:14-cv-00019-SPM |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Paul Farbush ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

### I. PROCEDURAL BACKGROUND

On November 4, 2011, Plaintiff applied for DIB, alleging that he had been unable to work since June 1, 2008 due to adjustment disorder, major depression, and insomnia. (Tr. 98-100, 141). His application was initially denied. (Tr. 52-56). On April 2, 2012, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 62-63). Plaintiff appeared and

1

testified at a hearing before the ALJ on March 19, 2013. (Tr. 23-43). On August 28, 2013, the ALJ issued an unfavorable decision. (Tr. 5-22). On October 22, 2013, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 4). On November 25, 2013, the Appeals Council issued a decision declining to review the matter. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

At the time of the hearing before the ALJ, Plaintiff was living at a transitional house for veterans. (Tr. 37). Before that, he was homeless. (Tr. 37). At the time of the hearing, Plaintiff was enrolled in barber school and had been since September 2012. (Tr. 32, 34). Plaintiff last worked for about two months in 2011, doing floor maintenance and cleaning. (Tr. 31). He has worked in the past doing maintenance and cleaning at a grocery store. (Tr. 28-30). Plaintiff has looked for jobs as a monitor and telephone operator but has been unable to find work. (Tr. 37).

Plaintiff testified that he cannot work because of his major depressive disorder, his ankle problem, and a memory problem that relates to head injuries. (Tr. 32-33). Plaintiff testified that he has had depression since he was about 12 years old, and it has steadily escalated since then. (Tr. 35). He is irritable, does not get along well with others, and isolates himself. (Tr. 35). He takes antidepressants and sees a psychiatrist. (Tr. 36). Plaintiff suffered head injuries while in the military in 1986 and 1989, and he says that those have affected his memory, especially in the past few years. (Tr. 33). He forgets names, instructions, and details, and he has difficulty remembering some of the procedures in barber school. (Tr. 34).

Plaintiff testified that he has problems standing and walking and can stand for about 30 minutes before feeling pain. (Tr. 32-33). He has ankle braces. (Tr. 33).

Plaintiff's medical records reveal a history of treatment for substance abuse, depression, and adjustment disorder. (Tr. 242-48, 264, 279-86, 303-04, 328, 354-57, 512, 642-43, 663-64). The record also contains the following opinion evidence regarding Plaintiff's mental abilities: (1) the April 2013 report of examining psychologist Kirmach Natani, Ph.D., who indicated that Plaintiff had moderate limitations in several areas of mental functioning (Tr. 1813-14); (2) the May 2011 report of non-examining state agency psychologist Kyle DeVore, Ph.D., who indicated that Plaintiff was limited to simple tasks with no public contact and no intense interaction with others (Tr. 711-21); (3) the January 2012 report of non-examining state agency psychologist M.W. DiFonso, PsyD, indicating that there was "insufficient evidence" to determine whether Plaintiff had a medically determinable mental impairment and "insufficient evidence" to assess whether Plaintiff had any mental functional limitations (Tr. 1567-81); and (4) the March 2012 report of non-examining state agency psychologist Russell Taylor, Ph.D., affirming the findings of Dr. DiFonso. (Tr. 1581-83).

Plaintiff has also received treatment for bilateral ankle pain. (Tr. 312, 1590, 1606). With regard to Plaintiff's physical abilities, the record contains the April 2013 opinion and findings of examining physician Charles Mannis, M.D., who found that Plaintiff had some limitations in his ability to lift, carry, sit, stand, walk, and climb. (Tr. 1796-01).

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore*

*v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520. At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff last met the insured status requirements of the Act on March 31, 2011; that he did not engage in substantial activity during the period from June 1, 2008 through his date last insured; that Plaintiff had the severe impairment of chronic bilateral Achilles tendonitis but no severe mental impairments; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 10-12). The ALJ found that Plaintiff had the RFC "to perform light work as defined in 20

C.F.R. § 404.1567(b) where the claimant lifted or carried 50 pounds occasionally and 20 pounds frequently" and could sit for one hour at time for a total of five hours per day; could stand for one hour at a time for a total of two hours per day; could walk for one hour at a time for a total of one hour per day; could frequently operate foot controls; could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and could frequently balance, stoop, kneel, crouch, and crawl. (Tr. 12). The ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 15). However, relying on the Medical-Vocational Guidelines, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 16). Therefore, he found that Plaintiff was not under a disability from June 1, 2008, through March 31, 2011. (Tr. 16).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ's Step Two finding that Plaintiff has no severe mental impairments is not supported by substantial evidence; (2) that the RFC is not supported by substantial evidence, including some medical evidence; and (3) that the ALJ erred by relying on the Medical-Vocational Guidelines at Step Five because Plaintiff has severe mental impairments.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012)

(quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Step Two Finding That Plaintiff Had No Severe Mental Impairments is Not Supported by Substantial Evidence

Plaintiff's first argument is that the ALJ's finding at Step Two that Plaintiff had no severe mental impairments is not supported by substantial evidence. He argues that in making the Step Two finding, the ALJ largely ignored the findings of mental illness in Plaintiff's treatment notes and improperly weighed the opinion evidence in the record related to Plaintiff's mental limitations. The Court agrees.

To show that an impairment is severe, a claimant must show that he has a medically determinable impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1520(c), 404.1521(a). Examples of basic work activities include responding appropriately to supervision, co-workers, and usual work situations; dealing with changes in a routine work setting; using judgment; and understanding, carrying out, and remembering simple work instructions. § 404.1521(b). "An impairment is not severe if it amounts only to a slight abnormality that

would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). When considering the severity of mental impairments, the ALJ should consider four functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). When the degree of limitation in the first three functional areas is rated as "none" or "mild," and the finding in the fourth area is "none," the Commissioner will generally conclude the impairment is not severe, unless the evidence otherwise indicates there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

The ALJ acknowledged in his decision that Plaintiff had medically determinable impairments of anxiety, depression, and alcohol and cannabis addiction. However, applying the above analysis, he found that none of those impairments were severe. The ALJ found that Plaintiff had no limitations in activities of daily living, because Plaintiff could clean his room, wash dishes, do laundry, go outside, shop for food, watch television, read, garden, and play basketball. He found that Plaintiff had (at most) mild limitations in social functioning, because Plaintiff talked with his roommate, friends, and family; went to a support group; went to church; and had a girlfriend. He also found that Plaintiff had no limitations in concentration, persistence, or pace, citing November 20, 2010 mental status examination findings that Plaintiff had a good fund of knowledge, good insight, good judgment, and no delusions, hallucinations, or suicidal thoughts, as well as November 26, 2010 mental status examination findings that Plaintiff's attention, grasp, and concentration were all within normal limits. (Tr. 283-84, 513). The ALJ also found that Plaintiff had experienced no extended episodes of decompensation. (Tr. 11). Later in his decision, the ALJ relied on the same evidence to give "little weight" to the opinions of two

psychologists who examined Plaintiff and found that he had moderate limitations in several areas of mental functioning needed for work. (Tr. 15). On the other hand, the ALJ gave "great weight" to the opinions of two nonexamining state agency consultants, Dr. DiFonso and Dr. Taylor. (Tr. 15).

After review of the record as a whole, I do not find substantial evidence supports the ALJ's Step Two finding. First, in giving "great weight" to the opinions of Dr. DiFonso and Dr. Taylor, the ALJ stated that they "opined that [Plaintiff] does not have severe mental impairments." (Tr. 15). However, the ALJ appears to have mischaracterized these opinions. Neither Dr. DiFonso nor Dr. Taylor opined that Plaintiff did not have severe mental impairments. Instead, they found insufficient evidence on which to make an assessment of whether he had severe mental impairments. On the "Medical Disposition" section of the Psychiatric Review Technique form, Dr. DiFonso did *not* check the box labeled "No Medically Determinable Impairment," nor did he check the box labeled "Impairment(s) not Severe." Instead, he checked the box labeled, "Insufficient Evidence." (Tr. 1567). Similarly, when he was asked to evaluate Plaintiff's degree of limitation in each of the four major areas of mental functioning, Dr. DiFonso checked the box labeled "Insufficient Evidence" for each area. (Tr. 1577). In the Consultant's Notes section, Dr. DiFonso stated that there was "insufficient information re [date last insured]." (Tr. 1579). In Dr. Taylor's report, Dr. Taylor indicated that he came to the same conclusion as Dr. DiFonso. (Tr. 1583). He further stated that the record "shows insufficient mental health record information to make a medical decision." (Tr. 1583).

The ALJ's apparent misinterpretation of Dr. DiFonso's and Dr. Taylor's opinions is particularly problematic in light of the overwhelming medical evidence in the record that shows that Plaintiff did have mental impairments that would affect his ability to function in the

9

workplace. First, Plaintiff's treatment notes show a significant history of treatment for mental illness during the relevant period, most of which was not discussed anywhere in the ALJ's decision. Plaintiff has been diagnosed with major depressive disorder, adjustment disorder, and substance abuse disorders. (Tr. 242-50, 264, 279-86, 303-04, 328, 354-57, 512, 642-43, 663-64). He received frequent treatment for those conditions, including psychotropic medications, psychotherapy, support groups, and services from a social worker. (Tr. 249, 264, 285, 304, 332, 356, 524-25, 642, 663-64). Plaintiff's doctors, including his psychiatrist, consistently found that Plaintiff had GAF scores of 45 or 50 during the relevant time frame, which are scores that indicate Plaintiff had "serious symptoms" or a "serious impairment in social, occupational, or school functioning."[1] (Tr. 247, 285, 328, 356, 664). Although Plaintiff's mental status examinations included the normal findings cited by the ALJ, they also typically included findings that his mood was depressed and his affect was flat or constricted. (Tr. 247, 264, 283-84, 355, 512-13, 663-64). Plaintiff's psychiatrist also observed that Plaintiff had psychomotor retardation; speech that was slow, quiet and monotone; decreased spontaneous speech; low insight; and poor judgment. (Tr. 355, 663-64). Plaintiff also saw an occupational therapist during the relevant period, who noted that Plaintiff had decreased frustration tolerance, decreased impulse control, and "no experience with living alone, independently, and clean and sober." (Tr. 258).

---

[1] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health–illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 32.

Consistent with these treatment records, both of the medical sources who offered opinions about Plaintiff's mental limitations found that he had significant limitations in several areas of mental functioning necessary for work. The examining psychologist, Dr. Natani, opined that Plaintiff had moderate limitations in the ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisors and coworkers, and respond appropriately to work situations and to changes in the work setting. (Tr. 1812-15). Similarly, nonexamining state agency consultant Dr. DeVore opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to set realistic goals or make plans independently of others. (Tr. 722-24). Dr. DeVore also found that Plaintiff was "capable of performing simple work tasks" and "would benefit from limited interaction with others." (Tr. 724).

As discussed above, the ALJ gave "little weight" to Dr. Natani's and Dr. DeVore's opinions, and he discussed almost none of Plaintiff's mental health treatment records. The ALJ appears to have based his Step Two finding almost entirely on Plaintiff's accounts of his ability to perform daily chores and engage in personal hobbies and social activities, along with some isolated normal mental status examination findings from a single week in November 2010. However, the Eighth Circuit has "'repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a

claimant can perform full-time competitive work.'" *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (quoting *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998)). *See also Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989) ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. What counts is the ability to perform as required on a daily basis in the sometimes competitive and stressful environment of the working world.") (citations and quotation marks omitted). *Cf. Tate v. Apfel*, 167 F.3d 1191, 1198 (8th Cir. 1999) (a claimant's ability to get along with family members and friends was not inconsistent with evidence that the claimant had other social difficulties). In addition, the ALJ offered no rationale for giving weight to some isolated normal mental status examination findings while not even discussing the numerous abnormal findings in the record showing that Plaintiff had a depressed mood and a constricted or flat affect; low insight; poor judgment; speech that was slow, quiet and monotone; and GAF scores showing serious limitations. Although an ALJ is not required to discuss all the evidence submitted, *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000), he nevertheless cannot merely "pick and [choose] only evidence in the record buttressing his conclusion." *Taylor o/b/o McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004).

The Court is mindful of its obligation to defer to the ALJ's findings when those findings are supported by substantial evidence and lie within the "available zone of choice." *See, e.g., Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007); *Partee*, 638 F.3d at 863. However, for all of the above reasons, the Court does not find substantial evidence to support the ALJ's Step Two finding that Plaintiff had no severe mental impairments during the relevant period.

The Court recognizes that an ALJ's error at Step Two in failing to find a particular impairment severe may not require reversal where the ALJ finds other severe impairments and

considers all of a claimant's impairments, severe and non-severe, in assessing the RFC and conducting the rest of the five-step analysis. *See Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."). Here, however, as discussed below, the ALJ did not consider Plaintiff's mental impairments in making either his RFC finding or his finding at Step Five. Therefore, the Step Two error is not harmless, and remand is required.

### C. The RFC Assessment Is Not Supported by Substantial Evidence

Plaintiff also argues that the RFC is not supported by substantial evidence and is not supported by "some" medical evidence. The Court agrees.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). In addition, the ALJ must include in the RFC assessment "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711

(8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Id.* at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

The ALJ included several physical limitations in the RFC but included no mental limitations. The RFC assessment contains almost no discussion of Plaintiff's mental health treatment records and no narrative discussion of the assessment of Plaintiff's mental RFC. The ALJ apparently based the mental component of the RFC finding on the same evidence he used to find that Plaintiff had no severe mental impairments at Step Two: his erroneous belief that Dr. DiFonso and Dr. Taylor had found Plaintiff had no severe mental impairments, the isolated normal mental status examination findings from November 2010, and Plaintiff's accounts of his ability to perform chores and engage in personal hobbies and social activities. For the reasons discussed above with respect to Step Two, this does not constitute substantial evidence, particularly in light of the opinion evidence and treatment records showing that Plaintiff did have significant limitations in several areas of mental functioning.

On remand, the ALJ should re-assess Plaintiff's RFC in light of "all relevant, credible evidence in the record," including the evidence related to Plaintiff's mental impairments. *See, e.g.*, *Tucker*, 363 F.3d at 783. The ALJ should ensure that the mental component of Plaintiff's RFC is supported by substantial evidence, including "some" medical evidence. *See Hutsell*, 259 F.3d at, 711-12. The ALJ should also include a proper narrative discussion of the evidence that supports the mental component of the RFC, in accordance with SSR 96-8p.

The Court notes that the physical component of the RFC assessment is arguably supported by substantial evidence, including the findings of consultative examiner Dr. Mannis,

Plaintiff's treatment notes, and Plaintiff's daily activities. However, in re-assessing Plaintiff's RFC on remand, the ALJ must assess the combined effect of both the mental and physical impairments. *See* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments . . . the combined impact of the impairments will be considered throughout the disability determination process"); *Scott v. Astrue*, No. 4:11-CV-295-AGF, 2012 WL 4479128, at *21 (E.D. Mo. Sept. 28, 2012) (remanding for the ALJ to consider the combined effect of the plaintiff's mental and physical impairments even where the evidence arguably supported the ALJ's RFC assessment with respect to the plaintiff's physical impairments).

### D. The ALJ's Step Five Finding

Because the ALJ must reconsider his Step Two analysis and Plaintiff's RFC on remand, the Court need not reach the question of whether the prior Step Five finding based on the Medical-Vocational Guidelines was supported by substantial evidence. However, the Court notes that it is well-established that the ALJ may not rely on the Medical-Vocational Guidelines at Step Five where the claimant has a severe mental impairment. *See Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989) (holding that it was improper for the ALJ to use the Medical-Vocational Guidelines at Step Five in a case involving a mental impairment and stating, "Since [the claimant] suffers from a severe mental impairment, the Secretary must use vocational expert testimony or other similar evidence in order to meet his burden of showing the existence of jobs in the national economy that the claimant is capable of performing"); *King v. Astrue*, 564 F.3d 978, 979 (8th Cir. 2009) (reversing and remanding based on *Wheeler* in a case involving a mental impairment; stating, "we can find no case in our circuit sanctioning the Commissioner's use of the grids at step five, as opposed to VE testimony, in a case involving a severe mental nonexertional impairment"); *Brock v. Astrue*, 674 F.3d 1062, 1065-66 (8th Cir. 2012) (reversing

15

and remanding based on *King* and *Wheeler*; stating, "Because the ALJ determined that [the claimant] suffered from severe mental impairments, the ALJ should have consulted a vocational expert in determining whether [the claimant] had the RFC to perform other jobs that exist in significant number in the national economy.").

VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of March, 2015.